**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BURNELL WHEAT, on behalf of herself and on behalf of all others similarly situated, | ) ) ) | **ELECTRONICALLY FILED** |
| Plaintiffs, | ) ) | Civil Action No. 06-cv-01270 |
| v. | ) ) | Cercone, J. |
| HOUSING AUTHORITY OF THE CITY OF PITTSBURGH, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' BRIEF IN RESPONSE TO**
**DEFENDANT'S MOTION TO DISMISS**

### I.   Background and Introduction

Plaintiff Burnell Wheat applied to the Defendant Housing Authority for housing benefits pursuant to the Section 8 tenant-based voucher program.  (Complaint, ¶2).  The Housing Choice Voucher Program, commonly referred to as "Section 8 voucher program," was established by Congress pursuant to Section 201(a) of the Housing and Community Development Act of 1974, amending Section 8 of the United States Housing Act of 1937.  See 42 U.S.C. § 1437f(o) (2003); 24 C.F.R. §§ 982.1 et seq. (2005).  It authorizes the Secretary of HUD to provide federal assistance to local public housing authorities, such as the Housing Authority of the City of Pittsburgh (hereafter "HACP" or "Defendant"), to provide tenant-based housing assistance (vouchers) to low income tenants.  42 USC §1437f(o)(1).

Defendant denied Ms. Wheat's eligibility for Section 8 housing benefits on the grounds that she allegedly owed the Defendant an outstanding debt for rent arising out of her 1994 tenancy in one of HACP's public housing units.  (Complaint ¶ 11).  HACP's Administrative Plan provides for administrative hearings for applicants who have been denied eligibility in the

voucher program.  (Complaint, Appendix A).  Ms. Wheat requested one of these hearings, and

prevailed.  Although the hearing officer issued a written decision on July 31, 2006 overturning

the agency's denial of Ms. Wheat's Section 8 application, the Defendant has failed to implement

this decision.  (Complaint ¶¶ 13-19).  Plaintiffs' Complaint alleges that the Defendant's policy of

denying eligibility for Section 8 housing benefits on the basis of alleged debts which are not

legally collectible violates the Housing Act, 42 USC 1437, et seq., its implementing regulations,

and HACP's own administrative plan.  Plaintiffs further allege that Defendant must implement

the decision of its hearing officer.

Defendant HACP has filed a motion to dismiss arguing that Ms. Wheat has no right under

the Housing Act to be eligible for benefits under the Section 8 program; that Section 1983 may

only be used to enforce statutory rights, and not those merely embodied in federal regulations;

and that a Section 8 applicant has no right to a binding grievance hearing.

## II.     Standard for Motion to Dismiss

For the Court to grant a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure, it must "appear[] beyond doubt that the plaintiff can prove no set of facts in

support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78

S. Ct. 99, 2 L. Ed. 2d 80 (1957).  The threshold inquiry in resolving a motion to dismiss is not

whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to

support his claims.  *See* Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90

(1974), *overruled on other grounds,* Davis v. Scherer, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed.

2d 139 (1984).  Just as with a motion to dismiss pursuant to Rule 12(b)(1), "the court must

accept as true all [of the plaintiff's] well-pleaded factual allegations and draw all reasonable

inferences in favor of the complainant." Elmore v Cleary, 399 F3d 279, 281 (3rd Cir. 2005).

III.   __ARGUMENT__

Plaintiff Burnell Wheat and the proposed class which she represents allege that the Housing Authority has erected an illegal barrier to eligibility for participation in the Section 8 voucher program by persons who would otherwise be eligible to participate.  They have not alleged, as suggested by Defendant, that the HACP must admit them to the voucher program. Instead they have alleged that HACP cannot remove them from the pool of eligible applicants for the voucher program by applying a screening standard that has not been established by HUD.[1] 42 USC § 1437f(o)(4)(A) provides that very low income persons (and other low income persons meeting additional criteria under §§ 1437f(o)(4)(B)-(E)) are eligible for Section 8 housing voucher benefits.[2]  42 USC 1437f(o)(6)(B) provides that a housing agency may employ screening criteria established by the Secretary of HUD when selecting tenants.

The pertinent HUD regulation provides that otherwise eligible low income persons can be excluded from the Section 8 program if they owe debts to the housing agency which are current and collectible.  24 CFR 982.552(c)(1)(V); 49 Fed. Reg. at 12216; 60 Fed. Reg. at 34689. Ignoring the standard established by HUD, HACP bars low income people from eligibility in the voucher program who owe past debts which are uncollectible.  Plaintiffs have filed the within litigation pursuant to Section 1983 to enforce the statutory provisions of the U.S. Housing Act.

A.   __The U.S. Housing Act, 42 USC § 1437f(o)(4) Gives Plaintiffs Enforceable Rights.__

There is no question that Section 1983 provides a federal remedy for violations not only of the United States Constitution but also for federal statutes as well.  <u>Maine v Thiboutot</u> , 448

---

[1] Once an applicant is deemed to be eligible, actual participation in the program awaits an opening in the voucher program and acceptance by a landlord.

[2] Ms. Wheat has an income of $630 per month from Supplemental Security Income and also receives $50 monthly in food stamps.  (Complaint ¶ 7).  This income is considered to be "very low" for purposes of the US Housing Act Section 8 voucher program.  <i>See</i> 42 U.S.C. § 1437f(o)(a); 24 CFR 982.4, Subpart F.

US 1, 4 (1980).  However, to have a cause of action under Section 1983 for violation of a federal

statute, a plaintiff must first establish that the statute in question gives the plaintiff enforceable

rights.  Gonzaga University v. Doe, 536 US 273 (2002).

The interrelated portions of the U.S. Housing Act defining eligibility for the Section 8

voucher program at issue in this case are as follows:

> 42 USC §1437f(o)(4) Eligible families.  To be eligible to receive
> assistance under this subsection, a family shall, at the time a family
> initially receives assistance under this subsection, be a low income
> family that is (A) a very low income family....
>
> 42 USC § 1437 f(o)(6) Selection of families and disapproval of
> owners.   (B) Selection of tenants.   Each housing assistance
> payment contract entered into by the public housing agency and
> the owner of a dwelling unit shall provide that the screening and
> selection of families for those units shall be the function of the
> owner.  **In addition, the public housing agency may elect to
> screen applicants for the program in accordance with such
> requirements as the Secretary may establish** (emphasis added).

The Secretary has through regulation created "such requirements" which disqualify otherwise

eligible low income persons only if they owe a debt to the housing agency which is currently

owed and collectible:

> 24 CFR 982.552 (c): "The PHA may at any time deny program
> assistance for an applicant…for any of the following grounds:....(v)
> If the family currently owes rent or other amounts to the PHA or to
> another PHA in connection with Section 8 or public housing
> assistance under the 1937 Act."
>
> "Past debt to a PHA is not grounds for denial of assistance.  The
> PHA may not deny assistance if the debt has been paid, or is not
> valid for any reason (e.g., a rent claim extinguished by the statute
> of limitations)....  49 Fed. Reg. at 12216; see also 60 Fed. Reg. at
> 34689.

In 1997, the Supreme Court established the current three-prong test for determining

whether a particular federal statute can be enforced through a private right of action under

section 1983.  Blessing v. Freestone, 520 US 329, 340 (1997).  The *Blessing* test requires: 1) that

Congress intended the statutory provision to benefit the plaintiff; 2) that the asserted right is not

so "vague and amorphous" that its enforcement would strain judicial competence; and 3) that the

provision couch the asserted right in mandatory rather than precatory terms.  *Id*. at 340-341.  If

the provision meets this test, then there is a presumption that it is subject to private enforcement

under section 1983.  *Id*. at 341.

### 1.   Congressional Intent to Benefit Plaintiffs

The Supreme Court clarified the first prong of the Blessing test in Gonzaga University v.

Doe*, supra*.  In Gonzaga, the Court held that congressional intent to benefit the plaintiff must be

shown by statutory language "phrased in terms of the persons to be benefited."  *Id*. at 284.  It is

clear that the statutory provisions in question meet this requirement.

Congress created the Section 8 Program "for the purpose of aiding low-income families

in obtaining a decent place to live and of promoting economically mixed housing...." 42 U.S.C.

1437f(a).  The sections of the statute which plaintiffs seek to enforce are designated "Eligible

families" and "Selection of families..." and the language of the statute focus on the eligibility of

low and very low income person for benefits.  It is clear that these statutory provisions are

directed to families as part of the statutory scheme to provide individual families with eligibility

to take part in the Section 8 voucher program.

In a recent case interpreting similarly targeted language in 42 U.S.C. § 1437f(o), the

United States Court of Appeal for the Fifth Circuit concluded:

> Congress's intent to provide meaningful housing assistance
> benefits to individual families participating in the voucher program
> is just as undeniable as it was with respect to families covered
> under the Brooke Amendment [dealing with benefits provided
> through the Housing Act's public housing program].  The statutory

language could not be clearer in providing for the "monthly assistance payment for a family receiving assistance."

Johnson v. Housing Authority of Jefferson Parish, 442 F.3d 356, 363 (5th Cir. 2006).

## 2.   Unambiguously Conferred Right

While the Blessing test emphasizes the intention of the statutory provision to benefit the plaintiff, Gonzaga as applied by the Third Circuit Court of Appeals in Sabree v. Richman, 367 F3d 180, 185 (2004), realigns this focus on the language of the relevant provisions. "As with implied rights of action, statutory claims under § 1983 must be premised on an unambiguous articulation and conferral of rights." *Id*. at 188.

The language of the Housing Act relied upon by plaintiffs is clear and clearly confers rights: "To be eligible for assistance under this program....a family shall....be a low income family that is (A) a very low income family...." Thus, the Housing Act clearly makes very low income families eligible for Section 8 voucher benefits. The Housing Act also provides that this unambiguously conferred right to be eligible for benefits can only be taken away by screening requirements "in accordance with such requirements as the Secretary may establish." 42 USC § 1437 f(o)(6)(B). Thus the right of an otherwise eligible low income person to be screened only in accordance with requirements established by the Secretary is also clearly conferred by the statute.

In Sabree v Richman, *supra*, the Third Circuit Court of Appeals found that statutory provisions requiring that the state "must provide...assistance...with reasonable promptness to all eligible individuals" was clear and unambiguous and unambiguously conferred rights because the assistance conferred (ICF/MR services) were enumerated in the medicaid statute. Similarly,

the provisions of 42 U.S.C. §§ 1437f(o)(4) and 1437f(o)(6) clearly and unambiguously confer

rights to low and very low income persons to be eligible for Section 8 housing assistance.

### 3.   Enforcement Not Beyond Judicial Competence

The *Blessing* test requires that the statutory right asserted must not be so "vague and

amorphous" that its enforcement would strain judicial competence.  *Blessing*, 520 U.S. at 340-

341.  Defendant Housing Authority has not argued that its policy is in accordance with the

requirements of 24 CFR 982.552(c), but only that the regulation cannot be enforced by plaintiffs.

In this case the court is being asked to restrain the Housing Authority from using screening

criteria which are not established by the Secretary through regulation to exclude otherwise

eligible low income persons from the Section 8 voucher program.  Requirements which are not

expressly authorized by Congress cannot be used to exclude persons who are eligible under

federal statutes." Carleson v. Remillard, 406 U.S. 598 (1972); Townsend v. Swank, 404 U.S.

282 (1971); King v. Smith, 392 U.S. 309 (1968).  The Housing Act's guarantee of eligibility for

benefits, and that housing authorities not use their own–perhaps biased–screening policies, could

not be more clear and straightforward.

### 4.   Statutory Structure of the Housing Act Supports Plaintiffs' Claims

The Sabree court took note that "[i]n Gonzaga University, the Court instructs that not

only should the text of the statute be examined, but also its structure" to determine whether the

statute confers rights enforceable through Section 1983.  Sabree v Richman, 367 F3d 180, 191.

A review of the structural components of the Housing Act further supports the conclusion that

the cited sections create rights enforceable by plaintiffs.

In analyzing the policies and other structural components of The U.S. Housing Act, courts have explicitly found these components to be mandatory in nature, not precatory.  *E.g.* Kirby v. HUD, 675 F.2d 60 (3rd Cir. 1982); United States v. Winthrop Towers, 628 F.2d 1028 (7th Cir. 1980).  Further, with respect to 42 U.S.C. § 1437f(o), courts have repeatedly found enforceable rights to exist.  Wright v. City of Roanoke Redevelopment & Housing Authority, 479 US 418 (1987);[3] Johnson v. Housing Authority of Jefferson Parish.

### 5.   No Congressional Preclusion of Section 1983 Remedy

Even where a right has been unambiguously conferred, a state may rebut the presumption of the availability of Section 1983 by demonstrating that Congress, either expressly or by providing a comprehensive remedial scheme, intended to preclude individual suits.  Sabree v Richman, 367 F.3d at 193.  However, the burden to demonstrate that Congress has expressly withdrawn the remedy is on the defendant, and has made no such claim in its motion. Id.

Moreover, as in Wright, there is no indication in the Housing Act that Congress intended for exclusive enforcement authority to be vested in HUD.  As the Fifth Circuit observed in Johnson v. Jefferson Parish, supra, at 442 F.3d 356, 366:

> HUD's authority to audit, enforce annual contributions contracts, and cut off federal funds...are generalized powers [that] are insufficient to indicate a congressional intention to foreclose Section 1983 remedies. [See 479 US at 424] Both methods of enforcement, i.e., HUD oversight and private actions under Section 1983 , may coexist if Congress so intends.  And, even though Gonzaga emphasized Pennhurst's observation that Spending Clause legislation is most often enforced by the withholding of federal funds rather than by private lawsuits, the Court recognized and approved of Wright as an exception to this general rule.

### B.   24 CFR 982.552(c) is Enforceable through Section 1983.

---

[3] The Gonzaga Court specifically relied on Wright, pointing to it as a model example of an appropriate case for finding the presence of a private right of action under Section 1983 and leaving no doubt that Wright is still good law.  *See,* Gonzaga, 536 US at 280.

A regulation, when it construes a right conferred unambiguously by the statute, is also enforceable as part of the statute.  *See* South Camden Citizens in Action v New Jersey Dept of Envtl. Prot., 274 F3d 771, 773 (2002: "A plaintiff can only enforce a regulation under Section 1983 if the regulation 'merely defines the specific right that Congress already has confers through the statute."  In Wright the regulation construed the term "rent" in the statute to include utilities and the Supreme Court held that this construction of the statute was enforceable through Section 1983.

In this case, plaintiffs seek to enforce their statutory right to eligibility for the Section 8 voucher program and their right to be screened for selection out of eligible pool of applicants only in accordance with standards established by the Secretary.  Alternatively, they seek to enforce 24 CFR 982.552 ( c) as construing the specific right conferred by the statute.  That is, the statute provides for eligibility of very low income persons and selection out of the eligible pool according to standards established by the Secretary.  24 CFR 982.552 ( c) merely explains, or construes, what one of those standards is, and thus is enforceable under Section 1983.  South Camden Citizens in Action, supra.

   C.   **The Defendant's Denial of the Plaintiff's Eligibility for Section 8 housing Benefits Occurred Without Due Process of Law.**

The Defendant's denial of the Plaintiff's eligibility for Section 8 housing benefits—on the basis of an alleged prior debt no longer legally collectible and after the agency's own hearing officer determined the Plaintiff to be eligible—deprived the Plaintiff of her property interest in eligibility for Section 8 housing benefits under 42 U.S.C. § 1437f(o)(4) without due process of law.[4]

---

[4] The Plaintiff's due process claim is set forth in the class certification motion and implicit in the complaint.  The Plaintiff plans to amend the complaint to clarify this.

The Plaintiff has alleged that she is entitled to be in the pool of applicants eligible for Section 8 housing assistance under § 1437f(o)(4)(A) because she is a very low income person. After the Defendant initially denied the Plaintiff's eligibility on the basis of an alleged prior debt now legally uncollectible, the Plaintiff filed for a hearing under the Defendant's grievance procedure and won.  The Defendant, nevertheless, has failed to implement this decision.  Due process requires that state actors provide a process which is meaningful in time and meaningful in manner in order to prevent the erroneous deprivation of property interests.  The Defendant's refusal to abide by the grievance process required in its own administrative plan renders the process meaningless and a sham.

The Fourteenth Amendment to the U.S. Constitution prohibits state actors from depriving any person of a property interest without due process of law.  U.S. Const., Amend. XIV ("No State shall…deprive any person of…property without due process of law."); s*ee, e.g.,* Matthews v. Eldridge, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of…'property' interests within the meaning of the Due Process Clause of the…Fourteenth Amendment.").

Application of this prohibition requires a "familiar" two-step analysis.  First the court must determine whether the asserted interests are encompassed within the fourteenth amendment's protection of (life, liberty, or) property.  If protected interests are implicated, the court then must decide whether the procedures implemented provided due process of law.  *E.g.* Robb v. Philadelphia, 733 F.2d 286, 292 (3d Cir. 1984), citing Board of Regents v. Roth, 408 U.S. 564, 569-72, (1972) and Morrissey v. Brewer, 408 U.S. 471, 481 (1972); Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).

The Civil Rights Act of 1871 specifically authorizes those seeking relief to bring judicial proceedings to enforce constitutional rights deprived under color or state law.  42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution…shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….").[5]

### 1.   The Plaintiff's eligibility for Section 8 housing assistance under 42 U.S.C. § 1437f(o)(4) is a property interest protected by due process.

Eligibility for housing assistance benefits under 42 U.S.C. § 1437f(o)(4), like eligibility for other benefits created by statute, is a property interest protected by the due process clause of the Fourteenth Amendment to the U.S. Constitution.

In its seminal case on the nature and sources of property interests protected by due process, Board of Regents v. Roth, the U.S. Supreme Court stated, "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits.  These interests—property interests—may take many forms."  Board of Regents v. Roth, 408 U.S. 564, 576 (1972).[6]  Evaluating its prior decisions on the subject, the Court explained, "[c]ertain attributes of 'property' interests

---

[5] The Defendant has not disputed, nor could it, that the Housing Authority is a state actor within the meaning of 42 U.S.C. § 1983.  *See generally* 35 P.S. § 1550 (Pennsylvania Housing Authorities Law) ("An Authority shall constitute a public body, corporate and politic, exercising public powers of the Commonwealth as an agency thereof….").

[6] The Supreme Court reasoned, "to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake.  We must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property….  'Liberty' and 'property' are broad and majestic terms.  They are among the 'great [constitutional] concepts…purposely left to gather meaning from experience….  They relate to the whole domain of social and economic fact….'  Yet, while the Court has eschewed rigid or formalistic limitations on the protection of procedural due process, it has at the same time observed certain boundaries.  For the words 'liberty' and 'property' in the Due Process Clause of the Fourteenth Amendment must be given some meaning."  Board of Regents v. Roth, 408 U.S. at 571-72 (1972).

protected by procedural due process emerge from these decisions.  To have a property interest in

a benefit, a person clearly must have more than an abstract need or desire for it.  He must have

more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement

to it." *Id.* at 577.  The Court then identified sources to which courts should look to determine a

plaintiff's entitlement to a claimed property interest:

> Property interests…are created and their dimensions are defined by existing rules
> or understandings that stem from an independent source such as state law—rules
> or understandings that secure certain benefits and that support claims of
> entitlement to those benefits.  Thus, the welfare recipients in Goldberg v. Kelly
> had a claim of entitlement to welfare payments that was grounded in the statute
> defining eligibility for them.  The recipients had not yet shown that they were, in
> fact, within the statutory terms of eligibility.  But we held that they had a right to
> a hearing at which they might attempt to do so.  *Ibid.*, citing Goldberg v. Kelly,
> 397 U.S. 254 (1970).

Under the Supreme Court's guidance, Federal courts have had little difficulty concluding

that applicants who meet the objective eligibility criteria of a wide variety of governmental

benefits have a property interest entitled to protection under the due process clause.  *E.g.*

Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 99 S. Ct. 2100,

60 L. Ed. 2d 668 (1979) (parole applicant); Willner v. Committee on Character & Fitness, 373

U.S. 96, 83 S. Ct. 1175, 10 L. Ed. 2d 224 (1967) (bar applicant); Griffeth v. Detrich, 603 F.2d

118 (9th Cir. 1979), cert. denied, 445 U.S. 970, 100 S. Ct. 1348, 64 L. Ed. 2d 247 (1980)

(general assistance applicants); Larry v. Lawler, 605 F.2d 954 (7th Cir. 1978) (federal

employment applicant); Wright v. Califano, 587 F.2d 345, 354 (7th Cir. 1978) (social security

applicants); Freitag v. Carter, 489 F.2d 1377 (7th Cir. 1973) (chauffeur's license applicants);

Holmes v. New York City Housing Authority, 398 F.2d 262 (2d Cir. 1968) (public housing

applicants); Neddo v. Housing Authority of Milwaukee, 335 F. Supp. 1397 (E.D.Wis.1971)

(public housing applicant).

In concluding, for example, that "statutes providing for the payment of unemployment compensation benefits create in the claimants for those benefits property interests protected by due process," the Third Circuit Court reasoned "[o]ur conclusion…applies no less to claimants, like the Wilkinson class, seeking to establish eligibility in the first instance, than to claimants, as in <u>Ross v. Horn</u> seeking to establish continued eligibility.  The Wilkinson class members claim an entitlement to benefits that is grounded in the statute defining their eligibility.  Although they have not shown that they are, in fact, within the statutory terms of eligibility, the Supreme Court has made clear that due process protection extends to claimants seeking to establish their entitlement to the statutory benefits (internal citations omitted).  <u>Wilkinson v. Abrams</u>, 627 F.2d 650, 664-665 (3d Cir. 1980); *accord* <u>Kelly v. R.R. Ret. Bd., 625 F.2d 486, 490 (3rd Cir. 1980)</u> (<u>"</u>Due process must attach to the process of determining ineligibility, whether at the outset or after the receipt of benefits.").

Not surprisingly, Federal Courts have held Section 8 applicants to hold this same protected property interest.  *See, e.g.,* <u>Baldwin v. Hous. Auth.</u>, 278 F. Supp. 2d 365, 377-380 (D.N.J. 2003) and cases cited therein.

In this case, the Plaintiff meets the objective eligibility criteria for Section 8 Voucher assistance established by 42 U.S.C. §1437f(o)(4)(A).  The Plaintiff therefore has an entitlement to be in the pool of applicants eligible for Section 8 benefits under §1437f(o)(4)(A).  This is exactly the type of interest within the Fourteenth Amendment's protection of property. [7]

**2.** **<u>The Process afforded by the Defendant in denying the Plaintiff's eligibility for Section 8 assistance—providing a grievance hearing then refusing to implement the decision of its own hearing officer as required</u>**

---

[7] Members of the putative class in this case likewise have property interests in their eligibility for Section 8 assistance under 42 U.S.C. § 1437f(o)(4) which cannot be denied by the Defendant without due process of law.

**by the agency's administrative plan—deprived the Plaintiff of due**

**process of law.**

Once a protected property interest is established, due process analysis requires an evaluation of whether the process through which the alleged deprivation occurred provided the plaintiff with the process which was due.

The U.S. Supreme Court "consistently has held that some form of hearing is required before an individual is finally deprived of a property interest. *E.g.* <u>Mathews v. Eldridge</u>, 424 U.S. at 333. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time *and in a meaningful manner* (emphasis added)." *Ibid.* "[T]he decisionmaker's conclusion…must rest solely on the *legal rules and evidence* adduced at the hearing (emphasis added)." <u>Goldberg v. Kelly</u>, 397 U.S. at 271. "The hearing, moreover, must be a real one, not a sham or a pretense." <u>Joint Anti-Fascist Refugee Comm. v. McGrath</u>, 341 U.S. 123, 164 (1951); *accord* <u>Town of Castle Rock v. Gonzales</u>, 545 U.S. 748, 782 (2005).

This evaluation generally requires consideration of three factors: the private interest affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. <u>Matthews v. Eldridge</u>, 424 U.S. at 335 citing <u>Goldberg v. Kelly</u>, 397 U.S. at 263-271.

Although the weight of a property interest is irrelevant in determining whether the interest is protected by due process in the first instance (see <u>Board of Regents v. Roth</u>, note 4 above), the weight of the interest is relevent in determining what process is due. In this case, a very-low income person's eligibility for Section 8 housing assistance under 42 U.S.C. §

1437f(o)(4) is a critically important interest.  This cannot be minimized.  Eligibility the threshold entitlement without which affordable, decent safe and sanitary housing may be financially inaccessible.  In fact, this Court has determined that the erroneous deprivation of eligibility for Section 8 Voucher benefits results in irreparable harm, sufficient to justify immediate equitable relief.  Solomon v. Housing of the City of Pittsburgh, Docket No. 2:06-cv-1155 (W.D. Pa., September 18, 2006).  The importance of the Plaintiff's property interest in this case is demonstrated by the facts alleged, which are analogous the situation of the facts in Solomon. (Complaint ¶¶ 7-8, 36).

Further, the risk of an erroneous deprivation of the Plaintiff's property interest through the procedures used by the Defendant is great.  The Defendant's practice of refusing to follow determinations made through its grievance process results in no protection whatsoever to applicants.  The Defendant's action in this case completely deprived the Plaintiff of the opportunity to a decision based only on the applicable legal rules and evidence adduced at the hearing.  Goldberg v. Kelly.  By nullifying the requirements of its own grievance procedure and ignoring the result of the process, the Defendant provided no *meaningful* opportunity to protect against the erroneous deprivation of the Plaintiff's eligibility or housing benefits.  Mathews v. Eldridge.  The Defendant has turned this process into a sham or mere pretense.  Joint Anti-Fascist Refugee Comm. v. McGrath; Town of Castle Rock v. Gonzales; *accord* Wojcik v. Lynn Hous. Auth., 66 Mass. App. Ct. 103, 113 (Mass. App. Ct. 2006) ("It would be an empty gesture to provide a family the opportunity to present evidence and arguments on the only viable issue in the case yet preclude the hearing officer from making any decision on that issue…. There is no due process provided by the subsequent consideration by the PHA whether to disregard the hearing officer decision.  The family has no right or even opportunity under the regulations to

present its facts and arguments afresh at the PHA level, once the hearing officer has rendered a decision.  For due process to mean anything here the hearing officer must be able to make a decision on the discretionary issue, based upon the evidence and arguments presented to him.").

Further, as the Third Circuit Court has recognized, "a violation by an agency of its own rules can provide a basis for reversal of the agency action."  Lojeski v. Boandl, 788 F.2d 196, 199 (3d Cir. 1986).  "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.  This is so even where the internal procedures are possibly more rigorous than otherwise would be required." Ibid., citing Morton v. Ruiz, 415 U.S. 199, 235 (1974), Service v. Dulles, 354 U.S. 363 (1957) and United States ex. rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954).

Under these circumstances, the appropriateness of additional safeguards is obvious.

Finally, requiring the Defendant to adhere to the grievance procedure requirements of its own administrative plan will impose no burden on defendants.

8

**WHEREFORE**, the Plaintiff, on behalf of herself and on behalf of all others similarly situated, respectfully requests this Court to dismiss the Defendant's Motion to Dismiss and proceed to the merits of this case.

---

[8] Further, in administering Section 8 housing benefits to families eligible under 42 U.S.C. § 1437f(o), the Defendant is obligated to formulate an administrative plan for each year the agency administers such assistance.  42 U.S.C. § 1437c-1(b)(1).  The content of this plan is to be controlled by implementing regulations of the U.S. Department of Housing and Urban Development (§ 1437c-1(c)(1)), the plan must contain, at a minimum, a statement of the policies governing eligibility, selection, admissions with respect to Section 8 voucher housing assistance and a statement of the grievance procedures of the public housing agency.  §§ 1437c-1(d)(3) and (d)(6).  "In providing assistance…a public housing agency shall comply with the rules, standards, and policies established in the public housing agency plan."  § 1437c-1(l)(1); see also 24 CFR 982.54 (implementing regulations).

These statutory provisions are analogous to the provisions of Title XIX of the Social Security Act found by the Third Circuit to confer clear and unambiguous rights which were enforceable under 42 U.S.C. § 1983 by the plaintiffs, as intended recipients of benefits under the act in Sabree v. Richman, 367 F.3d 180 (3rd Cir. 2004).

Plan requires….  As this Court found in Solomon v. Housing Authority of the City of Pittsburgh, Docket No. 2:06-cv-1155 (September 18, 2006),

Respectfully Submitted:

Date: January 12, 2007

/s/ Kevin Quisenberry
Kevin Quisenberry
Pa. ID 90499

/s/ Evalynn B. Welling
Evalynn B. Welling
Pa. ID 31993

Community Justice Project
Suite 1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219
(412) 434-6002

Attorneys for Plaintiffs